**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:20-CR-00688 |
| Plaintiff, | ) | |
| | ) | Honorable John J. Tharp Jr. |
| vs. | ) | |
| | ) | |
| HYTERA COMMUNICATIONS | ) | ███████ |
| CORPORATION LTD., et al. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## NONPARTY VICTIM MOTOROLA SOLUTIONS, INC.'S VICTIM STATEMENT REGARDING HYTERA'S SENTENCING

**TABLE OF CONTENTS**

I.     INTRODUCTION ...........................................................................................................1

II.    BOTH BEFORE AND AFTER PLEADING GUILTY, HYTERA'S HISTORY AND CHARACTERISTICS HAVE BEEN DEFINED BY ITS "GAMESMANSHIP AND DECEPTION" ....................................................................4

     A.    There Is No Question That the Jury Found Hytera Liable for "All" Trade Secrets in the Civil Case and Also Found That Hytera Needed and Used Motorola's Trade Secrets ....................................................................5

     B.    Hytera Continues to Compete Against Motorola Using the Stolen Trade Secrets Pursuant to a Royalty Order, Which it Has Violated Multiple Times ....................................................................................................7

     C.    Hytera's Post-Plea Conduct Demonstrates Continued Noncompliance with Court Orders.....................................................................................9

III.    HYTERA'S THEFT AND CONTINUED USE OF STOLEN TRADE SECRETS SUPPORTS THE LOST PROFITS ON WHICH RESTITUTION IS BASED .............11

     A.    Hytera's Various Challenges to the Lost Profits Analysis Lack Merit................11

          1.    Hytera's Claim That There Is Insufficient Identification of Theft of Trade Secrets on Which to Base Lost Profits Is Wrong. .........................12

          2.    Hytera's Claim of Insufficient Evidence of Use of Trade Secrets on Which to Base Lost Profits Is Wrong. ......................................................14

          3.    Hytera's Claims Regarding the District Court Findings on Lost Profits and the Seventh Circuit's Review of The Record are Wrong. ...................................................................................................14

     B.    Restitution Is Mandatory...................................................................................16

     C.    The Complexity Exception Does Not Apply Because There Is No Complexity That Warrants It, and There Is a Significant Need for Restitution ..........................................................................................................16

IV.    THIS COURT SHOULD ORDER HYTERA TO PAY RESTITUTION IN A SINGLE LUMP SUM..........................................................................................................19

V.    THIS COURT SHOULD ADOPT MOTOROLA'S PROPOSED TERMS OF PROBATION...................................................................................................................20

     A.    Motorola's Request to Enjoin Hytera's Use of Stolen Trade Secrets Is Consistent with Probation Terms Routinely Ordered in Property Theft Cases ..................................................................................................................21

     B.    Comprehensive Independent Oversight Is Essential to Hytera's Compliance ........................................................................................................22

VI.    CONCLUSION................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. v. Bostic*,
No. 1:11CR218-1, 2012 WL 12535453 (M.D.N.C. July 31, 2012) ........................................16

*U.S. v. Calkins*,
906 F.2d 1240 (8th Cir. 1990) ...........................................................................................20, 21

*U S. v. Dodds*,
947 F.3d 473 (7th Cir. 2020) .................................................................................................22

*Honeycutt v. United States*,
581 U.S. 443 (2017) (quoting *Caplin & Drysdale, Chartered v. United States*,
491 U.S. 617 (1989).................................................................................................................21

*U.S. v. Hosking*,
567 F.3d 329 (7th Cir. 2009) *abrogated on other grounds by, Lagos v. United
States*, 584 U.S. 577 (2018) .....................................................................................................4

*U.S. v. Hou*,
No. CR 20-780 (MAS), 2022 WL 2671130 (D.N.J. July 11, 2022)........................................16

*Hytera Comm'ns Corp. Ltd. v. Motorola Solutions, Inc.*,
No. 1:17-CV-1794 (N.D. Ohio).............................................................................................1, 7

*U.S. v. Malone*,
747 F.3d 481 (7th Cir. 2014) .............................................................................................17, 18

*U.S. v. Mardirosian*,
602 F.3d 1 (1st Cir. 2010)........................................................................................................21

*U.S. v. Mavrick*,
601 F.2d 921 (7th Cir. 1979) ..................................................................................................21

*MN Mining & Mfg Co. v. Pribyl*,
*259 F.3d 587 (7th Cir. 2001)* ..................................................................................................13

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
108 F.4th 458 (7th Cir. 2024), *reh'g and reh'g in banc dismissed,* No. 22-
2370, 2024 WL 4416886 (7th Cir. Oct. 4, 2024), and *cert. denied,* 145 S. Ct.
1182, 221 L. Ed. 2d 257 (2025) ................................................................................... *passim*

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
No. 1:17-CV-1972 (N.D. Ill.) .....................................................................................................1

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
  No. 1:17-CV-1973 (N.D. Ill.) ..................................................................................1

*In re Newpower*,
  233 F.3d 922 (6th Cir. 2000) ................................................................................20

*In re Rosebud Farm, Inc.*,
  660 B.R. 222 (Bankr. N.D. Ill. 2024), *aff'd sub nom. Longo & Assocs., Ltd. v.
  Moglia as trustee for Rosebud Farm, Inc.*, No. 18 B 24763, 2025 WL 849615
  (N.D. Ill. Mar. 18, 2025) ................................................................................18, 19

*U.S. v. Sawyer*,
  825 F.3d 287 (6th Cir. 2016) ................................................................................16

**Statutes**

18 U.S.C. § 1831 ..................................................................................................16

18 U.S.C. § 1832 ..................................................................................................16

18 U.S.C. § 3553(a) ...............................................................................................1

18 U.S.C. § 3563(b)(22) ......................................................................................22

18 U.S.C. § 3572(d)(1) ..........................................................................................4

18 U.S.C. § 3663A ..........................................................................................16, 17

18 U.S.C. § 3664(d)(5) ........................................................................................17

U.S.S.G. § 8B2.1 ..................................................................................................22

U.S.S.G § 8C3.2(b) ..............................................................................................19

## I. INTRODUCTION

Hytera's criminal theft of trade secrets from Motorola Solutions, Inc. ("Motorola")—an iconic American technology company responsible for nearly a century of investment in research and development of pioneering technologies, from the radios on the Apollo missions and the first portable FM radios used by Allied Forces in World War II, including at Normandy and Iwo Jima, to the critical two-way radio technologies at issue here, is massive. That theft is massive in terms of the raw volume of critical communications infrastructure technology that Hytera blatantly stole resulting in its "leapfrog" into the industry to become the number two supplier of two-way radio products in the world today (*see* Exs. A, B),[1] and also in the efforts Hytera has taken to avoid remediation, opting instead to contest nearly every aspect of the criminal and civil cases while spending hundreds of millions per year on expanding its ability to sell stolen *Motorola* technology. The conspiracy by Hytera—orchestrated by its chairman and CEO—falls within a broader geopolitical program to damage Western national security and economic interests. *See* Ex. C ("It's the people of the United States who are the victims of what amounts to Chinese theft on a scale so massive that it represents one of the largest transfers of wealth in human history."). Hytera's victim-blaming effort to frame its massive, premeditated theft of American innovation as an inadvertent misstep borne of naivety and adequately addressed as a routine commercial dispute, betrays its obvious lack of repentance and its contempt for the rule of law, and it underscores the need for serious, comprehensive, and immediate criminal penalties under the factors set forth in 18 U.S.C. § 3553(a).

During the time that Hytera has grown its market share while unlawfully using Motorola's trade secrets, Hytera also has been held by U.S. judges to have violated *six* separate court orders (*see Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-CV-1973 (N.D. Ill.) ("Trade Secret Case") Dkts. 1461, 1494, 1520, 1878 ("TS Dkt."); *Motorola Sols., Inc. v. Hytera Commc'ns*

---

[1] Ex. A, Tr. at 16:9–15, (*Hytera Comm'ns Corp. Ltd. v. Motorola Solutions, Inc.*, No. 1:17-CV-1794 (N.D. Ohio) (Deposition of Steven Cragg, Hytera VP of Sales, March 27, 2019)); Ex. B, Tr. 211:13–212:8 (*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-CV-1973 (N.D. Ill.) (Deposition of Andrew Yuan, Hytera VP of Sales, May 14, 2019)).

*Corp. Ltd.*, No. 1:17-CV-1972 (N.D. Ill.) ("Patent Case") Dkts. 387, 540 ("Patent Dkt.")), including being held in contempt ***three*** times (TS Dkts. 1461, 1520, 1905), necessitating enforcement of ***two*** emergency injunctions (TS Dkts. 1494, 1878) and requiring nearly ***fifty*** telephonic hearings—including in connection with Hytera's obviously fraudulent "redesign," which Honorable Judge Martha M. Pacold recently found to be substantially based on the stolen Motorola technology, contrary to Hytera's inaccurate assurances that it had been built from the "ground up" (*compare* Ex. D *with* TS Dkt. 1905 at 2). And while Hytera, with this Court's sentencing looming, pays lip service to purported repentance by claiming to have paid over $▮ million toward the civil judgment, only $▮ of that has been voluntary out of cash on hand; the remainder was only as a result of Motorola's efforts to collect from bankruptcy proceedings and from an emergency motion for a TRO to stop Hytera from dissipating its assets through an improper sale that violated the Court's transfer restrictions (Ex. E ("Vartain Decl.") at ¶¶ 4–6, 10)—all while Hytera rakes in hundreds of millions through continuing sales of stolen Motorola technology, which it reinvests in its own global reach or pays out in profits, including to its primary shareholder and chairperson, Qingzhou Chen, who is not only a central culprit of the theft but also its greatest beneficiary. In short, Hytera's illegal conduct strikes at the heart of innovation and reflects precisely the criminal misconduct that the Economic Espionage Act was enacted to prevent. As such, the full breadth of remedies authorized by that statute should be brought to bear on Hytera. Doing so will deter Hytera and other companies considering engaging in similar forms of theft from attempting such egregious strikes on American technology, ensure that United States companies continue to make investments in critical technologies without fear that they will be taken without recourse, and further condemn Hytera's strategy—which attempts to make it appear to be too frustratingly hard for the courts, the Government, and victims to pursue and achieve justice.

Hytera's sentencing memorandum confirms its plan to continue its misconduct. Hytera challenges nearly every aspect of the indictment and sentencing, as it denies corporate knowledge or involvement, shirks any admission of possession or use of trade secrets, denies that Motorola

2

even has trade secrets, insists that it be permitted to keep what it stole, claims it is unable to pay despite saying the exact opposite in its public securities statements, and attempts to explain away the decisions of the courts condemning its behavior as wrong, or, in the case of the Seventh Circuit, as irrelevant dicta. But these are issues that have already been decided against Hytera over seven years of litigation, and both the district court and the Seventh Circuit have amassed voluminous records confirming Hytera's liability and unceasing litigation misconduct. As such, Hytera's arguments are nothing more than Hytera's latest attempt to evade remediation. This is par for the course for Hytera, as the Seventh Circuit accurately found: "for much of the intervening six years of litigation, including after these appeals were filed, *Hytera has continued its gamesmanship and deception*" and "[g]iven Hytera's record of behavior," "Hytera has shown that its unverified representations to the tribunal *cannot be trusted.*" *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108 F.4th 458, 472–73 (7th Cir. 2024), *reh'g and reh'g in banc dismissed,* No. 22-2370, 2024 WL 4416886 (7th Cir. Oct. 4, 2024), and *cert. denied,* 145 S. Ct. 1182, 221 L. Ed. 2d 257 (2025).

Contrary to Hytera's claims, the facts before the Court regarding Hytera's theft of trade secrets are sufficiently straightforward to be fully adjudicated at sentencing, and there is no undue complexity to the lost profits analysis that could ever reasonably serve as an escape-hatch for Hytera. Hytera is simply once again, as it has for seven years, endeavoring to delay and avoid altogether the only just outcome; the end of Hytera's use of stolen Motorola trade secrets and immediate restitution to Motorola for that unlawful use. Accordingly, Motorola respectfully asks that the Court impose a sentence to include (1) a single lump-sum restitution payment in the amount of $290,799,352.30, to be paid in full within two weeks of sentencing; (2) the destruction of all Motorola trade secrets in Hytera's possession, as well as conditions that otherwise end Hytera's unlawful use of them; and (3) a court-ordered compliance supervisor.

3

## II.  BOTH BEFORE AND AFTER PLEADING GUILTY, HYTERA'S HISTORY AND CHARACTERISTICS HAVE BEEN DEFINED BY ITS "GAMESMANSHIP AND DECEPTION"

The procedural history in the civil case is critically relevant to this Court at sentencing for three primary reasons.[2] ***First***, Hytera's "litigation misconduct" (*Motorola*, 108 F.4th at 500, 505) and "gamesmanship and deception" (*id.* at 472) throughout the civil proceedings speaks directly to the ***history and characteristics*** of the defendant, as well as to the necessity of a full restitution order and a sentence that ensures compliance with the terms of Probation. Put simply, Hytera's litigation conduct in this case demonstrates that Hytera does not respect the laws of the United States or its courts, and that Hytera has not yet been specifically deterred.[3] ***Second***, the history demonstrates that Hytera is now replaying arguments long since decided against it—i.e., that Motorola's trade secrets are not trade secrets, any trade secrets are not sufficiently identified, and Hytera did not use any Motorola trade secrets—confirming that Hytera has no intent to accept its wrongdoing and change. To date, a jury, the district court judge who decided damages issues, the Seventh Circuit, and now Judge Pacold in determining the H-Series, have all rejected these arguments. Further, the robust findings of fact from Judge Norgle as well as Judge Pacold in the more recent H-Series Order buttress the Government's significant proof here. ***Third,*** Hytera's years-long campaign to avoid paying the 2020 final judgment—through repeatedly disproven claims that it cannot pay—demonstrate that restitution made payable ***immediately*** is proper under the Mandatory Victim Right's Act(*see United States v. Hosking,* 567 F.3d 329, 336 (7th Cir. 2009) *abrogated on other grounds by, Lagos v. United States,* 584 U.S. 577 (2018) (recognizing § 3572's preference for immediate payment, which is only defeated when the interest of justice demands otherwise); 18 U.S.C. § 3572(d)(1)), and that additional stringent Terms of Probation are necessary to give force to the Court's Judgment.

---

[2]  Motorola's Victim Impact Submission further details this history.

[3]  Hytera has plainly not been specifically deterred, and the general deterrent value is significant here.

4

**A.    There Is No Question That the Jury Found Hytera Liable for "All" Trade Secrets in the Civil Case and Also Found That Hytera Needed and Used Motorola's Trade Secrets**

Motorola filed suit in March 2017 against Hytera and two of its then-existing U.S. subsidiaries (Hytera America, Inc. and Hytera Communications (West), Inc. ("Hytera America Subsidiaries")) alleging trade secret misappropriation. *See* TS Dkts. 1, 266.  The Trade Secret Case proceeded to trial in February 2020 and Judge Norgle and an Illinois jury found that Hytera willfully and maliciously misappropriated "***all trade secrets***" asserted by Motorola as well as copyright liability:

> On this point, the Court agrees with Motorola that it has shown success on the merits in this case. The jury was given the option to apportion damages if it found fewer than all 21 trade secrets misappropriated; yet the jury awarded the full damages amount Motorola requested. *See* Dkt. 947. Part of that award was $73 million for avoided research and development for all asserted trade secrets. *See* Trial Tr. 2184:17-2185:10, 2189:6-15. ***Based on the entirety of the jury's verdict, it is therefore clear that the jury in fact found all trade secrets misappropriated and all copyrights infringed.***

TS Dkt. 1097 at 3 (emphasis added). Judge Norgle further issued specific findings of fact and conclusions of law including that:

> Motorola proved that Hytera stole 21 distinct trade secrets at trial (collectively, 'Misappropriated Trade Secrets'). For each trade secret, Motorola presented highly confidential technical and engineering materials relevant to that specific trade secret and explained those materials through five fact witnesses and numerous experts across more than 25 hours of testimony. Motorola's witnesses explained that these stolen materials constituted the 'playbook' by which Motorola engineers built its two-way radio devices.
>
> ***
>
> Hytera's experts attempted to argue that the Misappropriated Trade Secrets were not important to Hytera's development of DMR radios, and that without the misappropriation, Hytera could have released its radios in six months, but those assertions were not credible.

TS Dkt. 1100 (Findings of Fact) at ¶¶ 7, 74.

Judge Norgle's findings of fact also eviscerate Hytera's arguments that there is no evidence (and was no evidence in the civil case) about its use of the trade secrets on which lost profits were based—in fact, Judge Norgle had an entire section of findings on this point: "Hytera Needed

5

Motorola's Trade Secrets to Enter the DMR market." TS Dkt. 1100 (Findings of Fact) at ¶¶ 13–26. In further findings, Judge Norgle credited Motorola's experts, including Dr. Wicker and Mr. Malackowski (*see*, *e.g. id.* at ¶¶ 37, 39, 40–43, 49–50, 54–60, 67, 77, 92), and found Hytera's experts not credible (*see*, *e.g. id.* at ¶¶ 38, 63, 65, 73–75, 77 (finding Hytera's experts Dr. Aron and Mr. Grimmett not credible)).[4] Judge Norgle, after reducing the damages,[5] awarded Motorola more than $543 million for Hytera's theft and copyright infringement.[6] *See* TS Dkt. 1100 (Findings of Law) ¶ 42. To date, as discussed further below in Section III, Hytera made no payment until March 4, 2025 (aside from the $█ million Motorola collected from the bankruptcy) and has only paid approximately $█ million in the five years since judgment became final—less than a quarter of the damage award affirmed by the Seventh Circuit (and none of that should be credited to its restitution obligation, see *infra* Section III).

On May 26, 2020—the same day that Motorola could begin enforcing its judgment—the Hytera America Subsidiaries filed for Chapter 11 bankruptcy. *See* TS Dkt. 974 at 1; TS Dkt. 975 at 1; *In re Hytera Commc'ns Am. (W.), Inc. et al.*, No. 8:20-bk-11507-ES (Bankr. C.D. Cal.), Dkt. 17 at ¶¶ 30–35.[7] Hytera created a new U.S. subsidiary to acquire the Hytera America Subsidiaries' business,[8] bankruptcy proceedings closed with Hytera US as the successor in interest of the Hytera America Subsidiaries, and Motorola recovered only $█ million even though Hytera never missed a beat with its operations through its newly-minted U.S. subsidiary.

---

[4] Motorola focuses on the experts at issue in the current proceeding either raised or challenged by Hytera in its Sentencing Memorandum or Response to the Government's Sentencing Memorandum.

[5] This reduction by Judge Norgle was based on the "double recovery" if Hytera was awarded both disgorgement of profits and Hytera's avoided R&D. *See* TS Dkt. 1100 (Findings of Fact) at ¶¶ 80, 82, 85.

[6] This amount included $135.8 million in compensatory damages for trade secret misappropriation, $271.6 million in punitive damages for trade secret misappropriation, and $136.3 million in compensatory damages for copyright infringement. TS Dkt. 1100 (Findings of Fact) at ¶¶ 83, 86, 101.

[7] Hytera had foreshadowed this judgment-avoiding maneuver when its Chief Financial Officer, Mr. Nuo Xu, warned Motorola (in the presence of Hytera's CEO) that Hytera intended to retreat into "murky" countries. *See In re Hytera*, Dkt. 204, Ex. A (Lawless Decl.) at ¶¶ 38, 73.

[8] *In re Hytera*, Dkt. 775 at 5–6.

On July 2, 2024, the Seventh Circuit affirmed the trade secret damages award in full. *Motorola*, 108 F.4th at 468–69.[9]

### B. Hytera Continues to Compete Against Motorola Using the Stolen Trade Secrets Pursuant to a Royalty Order, Which it Has Violated Multiple Times

Immediately after trial and entry of judgment in its favor, Motorola requested a permanent injunction. Ultimately, Judge Norgle issued a Royalty Order instead, at Hytera's request and over Motorola's objection. TS Dkt. 1349 at 1–3.[10] Judge Norgle ordered Hytera to compensate Motorola on a quarterly basis for all sales of the products that were adjudicated at trial, with the first payment in an amount of $▮ million and interest due on July 31, 2022, reflecting sales of the covered products from July 1, 2019, through June 30, 2022. *See* TS Dkt. 1349 at 4; TS Dkt. 1361 at 2.

So far, the district court in the Trade Secret Case has found Hytera in contempt on three separate occasions. The first contempt finding arose from Hytera's failure to pay royalties. Three days before its ***first*** royalty payment was due on the very royalty that Hytera had asked the court to order, Hytera claimed a "▮▮▮▮▮▮" preventing timely payment. *See* TS Dkts. 1352, 1382. Motorola moved to hold Hytera in contempt for violating the Royalty Order. TS Dkt. 1386. After an August 17, 2023, evidentiary hearing, Judge Pacold held Hytera in contempt for violating the Royalty Order and found "the appropriate course" was to impose a worldwide injunction prohibiting Hytera from selling any two-way radio products until it was fully compliant. TS Dkt. 1461 at 19. Judge Pacold explained that "[d]espite holding itself out to investors as a stable and healthy company, ***Hytera has made no effort to access any unrestricted cash or assets***," "made no plan to put aside the significant revenue it has derived from operations," and "has not chosen

---

[9] The Seventh Circuit explicitly affirmed "the district court's award of $135.8 million in compensatory damages and $271.6 million in punitive damages," remanding only the copyright damages to the district court. *Motorola*, 108 F.4th at 468–69. Further, Hytera's request for en banc rehearing was denied in October 2024 (*Motorola*, 2024 WL 4416886, at *1) and the United States Supreme Court denied Hytera's petition for a writ of certiorari (*Hytera*, 145 S. Ct. 1182 (2025)).

[10] Despite finding the permanent injunction factors weighed "strongly" in Motorola's favor, Judge Norgle denied injunctive relief at the time because, in his view and based on representations from Hytera, Motorola's injury could be remedied by future, quantifiable damages. TS Dkt. 1097 at 3–4.

to cut any expenses." *Id* at 4. (emphasis added). Judge Pacold also reiterated that "Hytera must disclose immediately" any asset transfers "under the citation order entered by Judge Norgle." *Id.* at 15.

The second and third contempt findings arose surrounding the scope of the Royalty Order. Motorola uncovered Hytera's continued use of the trade secrets adjudicated at trial through concurrent discovery in the related Patent Case before Honorable Judge Franklin U. Valderrama. *See* Patent Case.[11] As a result, Judge Pacold, on March 25, 2024, opened contempt proceedings to resolve whether the H-Series products incorporate Motorola's trade secrets. TS Dkt. 1503 at 17. Meanwhile, Motorola also learned in late 2023 that Hytera had attempted to preempt any adverse adjudications of the H-Series in U.S. courts by surreptitiously seeking a declaration of non-infringement from a Chinese court in June 2022 (the "China Action"). TS Dkt. 1482 at 2. Accordingly, Motorola also sought an anti-suit injunction ("ASI") enjoining Hytera from further pursuing the China Action, which Judge Pacold issued the same day contempt proceedings were opened and ordered Hytera "to withdraw the action in China." TS Dkts. 1504 at 2; 1508.

Hytera defied the unambiguous order from Judge Pacold, did not withdraw, and instead put on testimony in, the China Action. Judge Pacold promptly found Hytera in contempt for violation of her order and imposed a global injunction on sales of any Hytera two-way radio products and a $1 million daily fine until Hytera came into compliance. TS Dkt. 1520 at 1–3. Hytera complied on April 7, 2024. TS Dkt. 1902.

Most recently, on August 22, 2025, Judge Pacold held Hytera in contempt for the third time for violating the Royalty Order with the H-Series. Specifically, Judge Pacold found that what Hytera touted as a re-design "from the ground up" was nothing more than continued misappropriation of Motorola's trade secrets. *See* TS Dkt. 1905 at 6. Judge Pacold found that "[w]hat Hytera labels a redesign is in truth substantially the same product." *Id.* at 2. Specifically,

---

[11] On July 17, 2025, in the Patent Case, Hytera was sanctioned and ordered to pay Motorola's attorneys' fees for its motion to hold Hytera in contempt for refusing to comply with multiple court orders requiring source code production. Patent Dkts. 388, 540.

Judge Pacold found that Hytera's ground up redesign was built on the "tainted foundation [that] traces back to Hytera's original misappropriation." TS Dkt. 1905 at 39. In finding Hytera in contempt of the Royalty Order for failing to pay Royalties on the H-Series, Judge Pacold reasoned:

> *[G]iven the scope of the trade secrets adjudicated at trial,* Hytera could have (and, if it wanted to avoid paying royalties, should have) taken a more conservative approach to the redesign. It did not do so, and ***as a result the H-Series products are substantially derived from the trade secrets embodied in the products adjudicated at trial***, providing further support for a finding of substantial likeness.

TS Dkt. 1905 at 42.

In holding Hytera in contempt for violating the Royalty Order by failing to make royalty payments on the H-Series, Judge Pacold rejected Hytera's claims that it no longer uses Motorola's trade secrets:

> According to Hytera, these changes resulted in broader changes to the codebase writ large, thus rendering the H-Series not substantially like the products adjudicated at trial.
>
> But ***the details tell a different story***. As discussed above, Hytera left several Motorola trade secrets in place. Many of the changes Hytera did make were merely cosmetic. And even when Hytera made real changes, it often did so simply by simply swapping out lines of code, modules, and portions of modules for functional equivalents in a plug-and-play fashion without changing the underlying structure or architecture. ***This ensured that Hytera could continue to profit off Motorola's designs***. These replacements of lines of code with functional equivalents ***did nothing to change the product's reliance on Motorola's trade secrets*** (which included the software architecture).

*Id.* at 38. (internal citations omitted) (emphasis added).

Astoundingly, at sentencing Hytera claims—contrary to Judge Pacold's order on the H-Series—that it "engaged in a rigorous and time-intensive redesign process to develop a DMR product that was free of any influence of Motorola's alleged trade secrets or copyrights." Dkt. 372 ("Hyt. Sent. Memo") at 11. Judge Pacold found precisely the opposite.

### C. Hytera's Post-Plea Conduct Demonstrates Continued Noncompliance with Court Orders

Hytera is under court order not to transfer assets without the court's permission, and yet it has repeatedly done just that, most recently on July 16, 2025. TS Dkt. 1021-2 at 7–8. Yet, Hytera

secretly sold its wholly owned subsidiary, Teltronic, S.A.U. ("Teltronic"), without notice to the Court or Motorola and in violation of the Court's transfer restrictions, and took the proceeds to pay off its own loans. TS Dkt. 1895 at 5;[12] Vartain Decl. at ¶ 10. Motorola learned of the sale through public reporting, and on July 30, 2025, Motorola filed an emergency motion to hold Hytera in contempt of the Citation. TS Dkt. 1868. In a same-day hearing, Hytera admitted the Teltronic sales proceeds were "subject to the Citation." Ex. G, 2025-7-30 Hrg. Tr. at 14:3–9, 25:10–11. Hytera also admitted that, despite that, it had already directed $19 million of the proceeds to its banks and planned to send another $36 million to additional banks. Ex. G, 2025-7-30 Hrg. Tr. at 25:17–20. The court issued a TRO ordering Hytera to "place an amount equal to the full Teltronic, S.A.U. sale proceeds in Hytera's possession, custody, or control, in immediately available funds, and in an amount no less than $69 million in United States dollars, into escrow. . . ." TS Dkt. 1878 at 2, *see also* Vartain Decl. at ¶ 10 [13] The further contempt proceedings are pending before Judge Pacold, together with other motions in the Trade Secret Case.[14]

---

[12] On June 20, 2020, to assist in collecting its judgment against Hytera, Motorola served a court issued Citation to Discover Assets ("Citation"). TS Dkts. 1005, 1021-2. The Citation contains discovery obligations and transfer restrictions that prohibit Hytera from "making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which the judgment debtor may be entitled. . . ." TS Dkt. 1021-2 at 7–8.

[13] Motorola has a pending motion with the Judge Pacold to find Hytera in contempt pertaining to the sale of Teltronic and its violation of the court ordered Citation. *See* TS Dkt. 1895.

[14] Currently pending before Judge Pacold are Motorola's Renewed Motion for Turnover (Motorola asks Judge Pacold to order turnover of Hytera's assets to satisfy the judgment (TS Dkt. 1883)), Motorola's Renewed Rule 60(b) Motion for Reconsideration of Denial of its Motion for Permanent Injunction (Motorola asks Judge Pacold to enjoin Hytera from selling the DMR radios using Motorola's trade secrets (TS Dkt. 1805)), Parties' Submissions Regarding Copyright Apportionment (Motorola asks Judge Pacold to award Motorola $14 million in damages for misappropriation of its copyrights (TS Dkt. 1812)), Motorola's Motion to Hold Hytera in Contempt for Violating the Court's Citation Order (Motorola asks Judge Pacold to hold Hytera in contempt for the sale of Teltronic in violation of the Citation (TS Dkt. 1895)), Hytera's Motion for an Order Staying Execution of Judgment and Approving Escrow as Appropriate Security (Hytera asks Judge Pacold to allow it to post $70 million dollars into an escrow to secure stay of the H-Series order and tie up the funds which Hytera should turn over to Motorola to satisfy the judgment (TS Dkt. 1921)).

### III. HYTERA'S THEFT AND CONTINUED USE OF STOLEN TRADE SECRETS SUPPORTS THE LOST PROFITS ON WHICH RESTITUTION IS BASED

Chief among Hytera's false assertions is that it "already been punished far beyond any possible gain it obtained from the failings of its compliance program two decades ago." Hyt. Sent. Memo at 1. Hytera's position demonstrates that Hytera continues to deny responsibility for wrongdoing by its then CEO, who remains to this day Hytera's current chairman and controlling shareholder, Chen Qingzhou, and instead strives to frame this as a straightforward failure of internal controls. *But see* TS Dkt. 1100 (Findings of Fact) at ¶ 14 (Judge Norgle's finding that "Hytera's CEO recognized Hytera's need to develop a DMR product quickly. Tr. at 1849:3- 14, PTX-416 (2007 Hytera slideshow with statement from Chairman Chen shows 'that Mr. Chen has identified DMR as critical and has recognized Motorola as a key competitor in that segment of the market and wants to leapfrog Motorola.')"). Hytera's position is starkly in contrast to the Government's evidence and persuasively establishes that a sentence must ensure specific deterrence, because plainly Hytera has not yet learned any lesson. Notwithstanding that, the history above demonstrates that Hytera has spent the nearly *six years* since the jury verdict avoiding liability. It would certainly surprise and frustrate the jurors who devoted four months of their pre-COVID lives to learn that until March 4, 2025, Hytera had paid ***nothing*** towards damages (*see* Vartain Decl. at ¶¶ 4–6 (setting aside the $█ million that Motorola collected from the bankruptcy)), and to the present day, has paid only $█ million, including more than $69 million resulting from an emergency TRO (TS Dkt. 1878) sought by Motorola. Vartain Decl. at ¶¶ 4–15. And to the extent that Hytera finds the limited repercussions it has faced for its "large and blatant theft," *Motorola*, 108 F.4th at 468, uncomfortable, "***it is lying in a bed it has crafted for itself***. . . ." (TS Dkt. 1553 at 7 (Order from the Seventh Circuit Court of Appeals)).

#### A. Hytera's Various Challenges to the Lost Profits Analysis Lack Merit

Hytera's various arguments against payment of a fine to the Government or restitution to Motorola based on challenges to the lost profits analysis all fail. Here, Motorola briefly addresses Hytera's claims that it neither stole nor used Motorola's trade secrets on which to premise lost

profits, as well as Hytera's plea that it should not have to pay for its theft because the whole analysis is supposedly too complex for Your Honor.

1.      <u>Hytera's Claim That There Is Insufficient Identification of Theft of Trade Secrets on Which to Base Lost Profits Is Wrong.</u>

The Government has presented an enormous record of Hytera's theft of trade secrets, precisely identified in the Indictment and corresponding to those adjudicated in the civil case. Further, the Government has provided expert testimony on those. This record establishes at least by a preponderance of the evidence that Hytera is guilty of stealing Motorola's trade secrets, as set out in the Indictment. Dkt. 12. Hytera's assertions that there is no evidence that it stole Motorola's trade secrets or that its DMR products incorporate the stolen trade secrets are contradicted by the Government's evidence, but additionally, a jury, the presiding trial judge, and the Seventh Circuit have all found to the contrary. *See* TS Dkts. 1097 (Judge Norgle finding Motorola succeeded on the merits of trade secret misappropriation), 1100 (Judge Norgle's Findings of Fact and Conclusions of Law), 1905 (H-Series Contempt Order); *Motorola*, 108 F.4th at 468.

Having reviewed the trial court record to decide issues on appeal relating to the damages awards of the district court, the Seventh Circuit commented on both the enormity of the theft and Hytera's use of the trade secrets:

> This case concerns a ***large and blatant theft of trade secrets***. Plaintiff Motorola and defendant Hytera compete globally in the market for two-way radio systems. Motorola spent years and tens of millions of dollars developing trade secrets embodied in its line of high-end digital mobile radio (DMR) products. For a brief period in the early 2000s, Hytera struggled to overcome technical challenges to develop its own competing DMR products.
>
> After failing for years, Hytera hatched a new plan: "***leap-frog Motorola" by stealing its trade secrets***. Hytera, headquartered in China, poached three engineers from Motorola in Malaysia, offering them high-paying jobs in exchange for Motorola's proprietary information. Before those engineers left Motorola, and ***acting at Hytera's direction***, they downloaded thousands of documents and computer files containing Motorola's trade secrets and copyrighted source code. ***Relying on that stolen material, between 2010 and 2014, Hytera launched a line of DMR radios that were functionally indistinguishable from Motorola's DMR radios***. Hytera sold these professional-tier radios containing Motorola's confidential and proprietary technology for years in the United States and abroad.

*Motorola*, 108 F.4th at 468 (emphasis added).

And while Hytera claims that it is entirely unclear what the civil jury found (if anything), Judge Pacold's recent order holding Hytera in contempt for the H-Series rejected that argument, relying on Judge Norgle's findings of fact in her own findings as to the scope of adjudicated trade secrets. *See* TS Dkt. 1905 at 11–12:

> At trial, Motorola presented a list of twenty-one distinct trade secrets that it argued Hytera misappropriated.
>
> ***
>
> In other words, the protections were limited to Motorola's specific implementations of more general concepts or technologies. *E.g.*, Trial Tr. 706:2–13, 716:10–13, 739:9–11, 750:8–11 (testimony of Motorola witness explaining that the trade secrets were defined based on Motorola's specific implementations); [1088] at 8 (Judge Norgle's order recognizing that "materials which would fall within the public domain" may still be protectable as trade secrets if "collected and set out as a unified process" (quoting *MN Mining & Mfg Co. v. Pribyl, 259 F.3d 587 (7th Cir. 2001)*)).
>
> ***
>
> The jury did not specifically find whether or which trade secrets appeared in Hytera's products. *Id.* As Judge Norgle explained, however, the jury's verdict made "clear that the jury in fact found *all trade secrets misappropriated and all copyrights infringed.*" [1097] at 3 (emphasis added).

TS Dkt. 1905 at 15.

The Court should not credit Mr. Grimmett's expert report, which maintains the same position he tried to sell to the civil jury—that Motorola's trade secrets are not trade secrets, they are not identified specifically, and Hytera did not use them. The jury rejected this argument already. After the jury found Hytera liable for all trade secrets, Grimmett worked on the fraudulent "re-design" and testified to Judge Pacold about the "re-design." *See id.* at 16. In the H-Series Contempt Order, Judge Pacold criticized Mr. Grimmett and Hytera's reliance on him. *Id.* at 21 (explaining that Mr. Grimmett testified at trial that "*none* of the information Motorola claimed at trial was, in fact, a trade secret" and it was not clear how he "completely divorced" from the views he expressed at trial to lead the re-design). Put differently, leaving Mr. Grimmett to supervise the "re-design" was like leaving a fox to guard the henhouse. Even in his position at sentencing, ███

███████████████████████████████████████████████████████

13

███████, though in a deposition on the H-series contempt proceedings, Mr. Grimmett, testified: "I accept that, you know, there was a guilty . . . verdict and *all 21 trade secrets were upheld by the court*" (TS Dkt. 1905 at 39).

> 2. Hytera's Claim of Insufficient Evidence of Use of Trade Secrets on Which to Base Lost Profits Is Wrong.

Hytera's arguments that the Government has failed to show that Hytera *used* any trade secrets—like its arguments that there are no trade secrets—likewise have been rejected in the civil proceedings and the court should reject them here too. *See* TS Dkt. 1097 at 3 (Judge Norgle finding that "[b]ased on the entirety of the jury's verdict, it is therefore clear that the jury in fact found *all trade secrets misappropriated* and all copyrights infringed.") (emphasis added).

The evidence in the civil trial was clear: *Hytera would have no two-way DMR radios without stealing Motorola's trade secrets*. Judge Norgle spelled this out in significant detail in his post-trial order ordering the steep damages award arising out of the stolen trade secrets. *See* TS Dkt. 1100 (Findings of Fact) at ¶ 49 (referencing Dr. Wicker's testimony "that without Motorola's source code, Hytera's DMR radios 'simply would not function'"); *id.* (referencing testimony from Ms. Frederiksen-Cross, Hytera's expert, that "but for the Motorola code that was stolen," Hytera's code "would not work"). Even Hytera's own expert, Mr. Grimmett, conceded in the civil trial that the "ROSAL specification [one of the trade secrets that Hytera somehow still claims ignorance of] contains 'utmostly necessary' technology." *Id.* This is not a case that demands "intricate issues of proof" as Hytera suggests. Hyt. Sent. Memo at 19. As the evidence in the civil trial showed, and as the Seventh Circuit recognized, Hytera's entire commercial operation was propped up by Motorola's stolen technology. *See Motorola*, 108 F.4th at 470 ("Motorola presented expert testimony that Hytera's radios would be unable to function without the stolen components.").

> 3. Hytera's Claims Regarding the District Court Findings on Lost Profits and the Seventh Circuit's Review of The Record are Wrong.

Hytera's rendition of the lost profits analysis ignores Judge Norgle's findings and the Seventh Circuit's review of them—including the findings specific to Mr. Malackowski. The

court's findings on lost profits were specific, which credited Mr. Malackowski (*see*, *e.g.* TS Dkt. 1100 at ¶¶ 10, 39–43, 50, 54–60, 67, 77, 92), while discrediting Dr. Aron and other Hytera experts and fact witnesses with contrary testimony (*see*, *e.g. id.* at ¶¶ 38, 41, 63, 65, 73–75, 77 (finding Hytera's experts Dr. Aron and Mr. Grimmett not credible)). *See Motorola*, 108 F.4th at 492 ("The court made these express findings in the course of figuring out which of the two compensatory damages paths produced the greater number.").

Judge Norgle confirmed that "the jury was properly instructed regarding lost profits under the DTSA." TS Dkt. 1100 (Findings of Fact) at ¶ 3 ("Hytera did not object to this instruction."). Judge Norgle also made an explicit finding of an amount of "$86.2 million in Motorola's lost profits"[15] (*id.* at ¶ 10), adopting a computation that was more thoroughly fleshed out in Motorola's Proposed Findings of Fact and Conclusions of Law (TS Dkt. 1095 at ¶ 10, n.4.). *See also Motorola*, 108 F.4th at 494 ("Motorola did not sneak its $86.2 million figure in under Hytera's nose; far from it. Hytera spent several pages challenging this figure in its own proposed findings of fact and law. But after the district court adopted Motorola's proposed lost profits amount."). Further, and contrary to Hytera's argument, this lost profits figure of $86.2 million was ultimately derived from the opinions of Mr. Malackowski. *See* TS Dkt. 1100 (Findings of Fact) at ¶ 10 (citing Mr. Malackowski's testimony at trial as well as exhibits from his expert reports).

Hytera's argument that Motorola abandoned Malackowski's lost-profits analysis is likewise inaccurate. Rather, at Motorola's request, "Judge Norgle adopted both of Motorola's proposed findings on the amounts of its lost profits and Hytera's avoided R&D expenses."

---

[15]  The Government explains in its sentencing memo why Motorola is now requesting $174,400,446 (excluding prejudgment interest) in restitution whereas Judge Norgle awarded $86.2 million in lost profits. *See* Government Sent. Memo at 25. Motorola was "temporally limited" in the civil matter to recover its lost profits between 2016–2019 because of DTSA's enactment date, *id.* at 38 n.13, but here, Motorola's lost profit-based restitution is available dating back to 2010 due to the earlier enactment of the Economic Espionage Act, *id.* at 25. Because Mr. Malackowski simply extended his lost profits estimate from the civil case into the elongated time period now available using the same methodology, his opinions remain equally reliable as they were in the civil matter. *Id.* at 25–26 (summarizing Mr. Malackowski's declaration which utilized "the same methodology approved by the district court in the civil case").

*Motorola*, 108 F.4th at 491. Indeed, the Seventh Circuit expressly recognized that Motorola had "always preserved its right to receive the higher of" lost profits or unjust enrichment. *Id.* At bottom, Hytera's effort to challenge Motorola's lost profits figure is yet another machination designed to relitigate an issue that has been decided against Hytera twice over. *See Motorola*, 108 F.4th at 491 ("Hytera mistakenly argues on appeal that the district court made no express finding as to the amount of Motorola's lost profits.").

### B.     Restitution Is Mandatory

The Federal Sentencing Guidelines provide that, for organizational crimes where there is an identifiable victim, the Court "***shall*** enter a restitution order for the full amount of the victim's loss, if such an order is authorized under [18 U.S.C. § 3663A]." Federal Sentencing Guidelines § 8B1.1(a) (emphasis added). Courts have awarded restitution to victims of trade secret theft in violation of 18 U.S.C. §§ 1831 and 1832.[16] In cases where the defendant is convicted of a conspiracy under the Mandatory Victim's Relief Act ("MVRA"), "the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction." *U.S. v. Sawyer,* 825 F.3d 287, 295 (6th Cir. 2016). Consistent with the MVRA, Motorola would be made whole by restitution in the amount of $290,799,352.30 to cover certain lost profits, attorneys' fees, and associated third party costs, paid within two weeks of the entry of the Judgment.

### C.     The Complexity Exception Does Not Apply Because There Is No Complexity That Warrants It, and There Is a Significant Need for Restitution

The complexity exception does not apply, and the only "complexity" here is that which Hytera attempts to improperly inject into these proceedings as part of its playbook for frustrating justice. This exception permits sentencing courts to forgo mandatory restitution where one of two

---

[16]    *See, e.g.*, *U.S. v. Bostic*, No. 1:11CR218-1, 2012 WL 12535453, at *1 (M.D.N.C. July 31, 2012), report and recommendation adopted, No. 1:11CR218-1, 2016 WL 1611120 (M.D.N.C. Apr. 21, 2016) (restitution of $255,065 for criminal theft of trade secrets in violation of 18 U.S.C. § 1832(a)(1) and (4)); *U.S. v. Hou*, No. CR 20-780 (MAS), 2022 WL 2671130, at *1 (D.N.J. July 11, 2022) (restitution for possession of stolen trade secrets in violation of 18 U.S.C. § 1831).

statutory prongs is satisfied, either: (1) where "the number of identifiable victims is so large as to make restitution impracticable"; or (2) determining the restitution amount "would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(A)-(B). The first prong plainly does not apply, and the second does not either. Any burden on the sentencing court is outweighed by the critical need for restitution. Restitution will be set aside for complexity only where "the burden on the sentencing process posed by determining complex issues of fact" outweighs "the need to provide restitution to a victim." *U.S. v. Malone*, 747 F.3d 481, 486 (7th Cir. 2014).[17]

The two days the Court has generously allocated to sentencing is more than sufficient to adjudicate the necessary issues,[18] and the existence of substantial evidence and a large record does not implicate the exception. Rather, the prior history simplifies the issues significantly and underscores the need for criminal restitution given Hytera's obstinance in refusing to pay otherwise.

There is a critical need for the court to decide, order restitution, and enter an immediate payment order. Currently, Hytera still owes Motorola approximately $███ million of the $490.4 million on the civil judgment. Vartain Decl. at ¶¶ 3, 15. This amount includes $135.8 million in trade secret compensatory damages (TS Dkt. 1100 (Findings of Fact) at ¶ 83), $271.7 million in punitive damages for trade secret misappropriation (*id*. at ¶ 86), $2.7 million in costs (TS Dkt. 1224 at 33), $15.7 million in trade secret prejudgment interest (TS Dkts. 1225 at 2, 1803 at ¶ 9), $34.2 million in attorneys' fees (Dkt. 1250 at 13), and $30.3 million in post-judgment interest (TS Dkt. 1803-1 at ¶ 9). Vartain Decl. at ¶ 3.

---

[17] While the Seventh Circuit has indicated that the exception might be satisfied in light of complex issues of causation or where calculating victim losses involve intense fact-finding ventures that might extend the sentencing timeline, that is not the case here. *See id.* (citing *U.S. v. Reifler*, 446 F.3d 65, 136 (2d Cir. 2006)).

[18] Motorola does not anticipate that additional time will be necessary; however, restitution can be completed within 90 days of sentencing. *See* 18 U.S.C. § 3664(d)(5).

The damages awarded to Motorola in the civil case are not an adequate substitute for the restitution for Hytera's criminal conduct for several reasons. It is Hytera's burden to show any payment it has made should offset a restitution order, *see Malone*, 747 F.3d at 486 ("[I]t is appropriate to place on the defendant the burden of proving that the loss amount should be reduced by compensation received by the victim from the defendant."), and its unsupported assertion that it has paid limited amounts towards compensatory damages is insufficient to meet that burden. Hytera cannot meet that burden.

*First*, the $135 million in compensatory damages awarded to Motorola does not account for six years of Hytera's profits for the count of conviction because Motorola could not recover damages that predated the enactment of the DTSA in 2016; this harm is accountable only in this criminal case as part of restitution, and accordingly there is nearly $155 million of lost profits that cannot be recoverable as civil compensatory damages.[19] Dkt. 363 ("Government Sent. Memo") at 28. **Second,** Hytera's payments on the judgment to date include no amounts paid towards compensatory damages. While Hytera claims that it has paid $███ million towards compensatory damages this year alone (Hyt. Sent. Memo at 46), the law does not allow Hytera to make a unilateral, self-interested allocation of its payments. *See In re Rosebud Farm, Inc.*, 660 B.R. 222, 263 (Bankr. N.D. Ill. 2024), *aff'd sub nom. Longo & Assocs., Ltd. v. Moglia as trustee for Rosebud Farm, Inc.*, No. 18 B 24763, 2025 WL 849615 (N.D. Ill. Mar. 18, 2025); *see also id.* at 263–64 (declining to permit judgment debtor to have prior payments on judgment allocated first to punitive damages portion of judgment, in absence of express agreement between the parties or governing court order). Further, Hytera's $███ million in payments to date are attributable first to interest, of which there is $██ million between pre- and post-judgment interest, and then to amounts that most benefit the creditor; here that is interest, fees and costs, and punitive damages—all before

---

[19] Mr. Malackowski's calculation as it pertains to restitution captures this time period. Vartain Decl., Ex. 3 at ¶ 8.

18

compensatory damages. *See* Vartain Decl. at ¶¶ 3–15; *In re Rosebud Farm,* 660 B.R. at 263 (applying the payment to the portion of the debt that benefits the creditor the most).

## IV. THIS COURT SHOULD ORDER HYTERA TO PAY RESTITUTION IN A SINGLE LUMP SUM

The Plea Agreement requires restitution to be paid immediately but permits the Court to impose a schedule consistent with U.S.S.G § 8C3.2(b), considering Hytera's ability to pay. Dkt. 353 at ¶ 14. Hytera is able to pay the entire amount immediately, and its management has assured its auditors that it can make the payment. The Court should expressly find that Hytera is currently able to pay and order a full payment due within two weeks of Order of Judgment. Prompt payment is necessary to avoid costly and burdensome enforcement proceedings for years in this Court, as the ongoing judgment collection history of the civil case readily demonstrates. Vartain Decl. at ¶ 17.

Hytera can pay the full amount now, and there is no need to set a schedule for payments under U.S.S.G § 8C3.2(b). Hytera's purported inability to pay is an inaccurate excuse it has invoked before to avoid the first lump-sum royalty payment; Judge Pacold rejected it and required Hytera to pay. TS Dkt. 1461 at 2 ("Hytera now claims that it has made reasonable and diligent efforts to comply with the royalty order and that in the alternative, it is unable to pay. Neither is true."). Hytera made the payment, contrary to all the argument and evidence—including testimony from its Chief Financial Officer Jillian Kang—that it had previously provided in claiming it was impossible to pay. *See* TS Dkt. 1469 at 1; *see also* TS Dkt. 1461 at 6 (Judge Pacold's assessment that "[t]he court finds Kang's declaration not credible in light of the written evidence attached to the declaration."). Hytera likewise has tried this same tactic in opposing Motorola's motion for turnover (*see* TS Dkt. 1834 at 2), and this issue is pending before Judge Pacold. The evidence clearly demonstrates that Hytera can pay, both through its own assets and cash, and through financing already arranged with its banks. Vartain Decl. at ¶¶ 19–55.

Critically, while Hytera claims it faces a " ███████████ " and is unable to pay, Hytera's Board of Directors recently announced that it approved Hytera to seek a comprehensive credit line

19

in the amount of $520 million to cover the orders of the civil and criminal courts. *Id*. at ¶ 46. Hytera provided assurances to its auditor that it could make its payments if ordered in a lump-sum; as a result, Grant Thornton concluded that Hytera would continue as a "going concern" if required to make lump-sum payments. *Id*. at ¶¶ 38–45. Even without the financing, Hytera has enough assets and access to capital to pay restitution. Hytera is a rich company, with substantial cash and non-cash assets that well exceed its other liabilities, and is doing well financially. *Id*. at ¶¶ 22–33, 35–37, 48–53.

Hytera's sentencing memorandum—including evidence submitted by its expert on this issue, Ms. Hong Qiao[20]—is largely silent on the key facts supporting its inability to pay, let alone address its 2024 financial report confirming that ***it can pay***. *Id*. at ¶¶ 38–46. Hytera is similarly silent on its ability to "rapidly" pull together $70 million to pay Court-ordered contempt arising from the H-Series, as Judge Pacold observed. Ex. F, 2025-10-15 Hrg. Tr. at 502:20–24.

Coupled with its demonstrable ability to pay, Hytera's actions in the related proceedings underscore that its compliance will be secured only by a sentence requiring Hytera to pay restitution in an immediate lump sum. Anything short will frustrate recovery due the victim and burden this Court for years dealing with Hytera's persistent non-compliance and excuses.

## V. THIS COURT SHOULD ADOPT MOTOROLA'S PROPOSED TERMS OF PROBATION

The probation conditions sought by Motorola are straightforward and necessary to vindicate the basic principle that a thief is not entitled to keep what he steals. *See, e.g.*, *In re Newpower*, 233 F.3d 922, 929 (6th Cir. 2000) (noting the "proposition, long established at common law, that a thief has no title in the property that he steals"). The possessor of stolen property is not entitled to negotiate conditions for its return, *e.g.*, *U.S. v. Calkins*, 906 F.2d 1240, 1247 (8th Cir.

---

[20] Ms. Hong Qiao testified in the proceedings before Judge Pacold in October 2025. In her declaration submitted prior to that testimony, Ms. Qiao failed to tell the Court that Hytera's Management included a plan for payment of the judgments of the United States courts. After Motorola's expert, Edward Westerman, explained to the Court that Hytera was able to pay and had a plan to pay, Ms. Qiao acknowledged the plan. Ex. F, 2025-10-14 Hrg. Tr. at 199:21–10.

1990); rather, he must "immediately and unconditionally turn over the goods to the rightful owner or to law enforcement officials." *Id*. (citing jury instructions). Indeed, "the act of demanding a fee for the return of stolen property is unlawful" and itself constitutes the crime of larceny. *United States v. Mardirosian*, 602 F.3d 1, 7 (1st Cir. 2010). Defendant's breathtaking proposal that a now-adjudicated felon be permitted to keep the property it stole—or that its theft entitles it to a license from its victim—would overturn principles of criminal law that date back to at least the 16th century, when crimes related to receipt and possession of stolen property were codified in England. *U.S. v. Mavrick*, 601 F.2d 921, 925 (7th Cir. 1979) ("virtually all American jurisdictions have defined this conduct as criminal"). In the criminal context of the Economic Espionage Act, this Court should reject defendant's idea that a massive criminal theft of trade secrets is an efficacious path to extract an unwanted licensing deal from the crime victim.[21]

**A.  Motorola's Request to Enjoin Hytera's Use of Stolen Trade Secrets Is Consistent with Probation Terms Routinely Ordered in Property Theft Cases**

Hytera's use of stolen Motorola trade secrets to this very day requires conditions to end this conduct by (a) quarantining Motorola's property and (b) ceasing Hytera's ability to sell products that use it. The government may "confiscate property derived from or used to facilitate criminal activity." *Honeycutt v. United States*, 581 U.S. 443, 447 (2017) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 629–30 (1989)). In tandem with restitution, enjoining criminal defendants from benefitting from their illicit behavior is an important tool for "'separating a criminal from his ill-gotten gain,' 'returning property, in full, to those wrongfully deprived or defrauded of it,' and 'lessen[ing] the economic power' of criminal enterprises." *Id.*

Hytera's conduct exemplifies the need for a specific deterrence as part of the probation terms. Indeed, its attempted subversion of a judicial decree by rebranding its trade secret-infringing H-Series radios landed Hytera its third contempt finding in as many years; Judge Pacold found it

---

[21]  As the government identified, Chen Qingzhou, Hytera's founder and CEO at the time, made reference in recruiting individuals to perpetrate the theft of Motorola's trade secrets that "'if we are caught, let them sue us,' or words to that effect." Government Sent. Memo at 4 ("Chen instructed G.S. to take as much of the source code from Motorola as he could. Exhibit C at 6-9.").

"undisputed that Motorola's trade secrets influenced the" H-Series codebase, which rendered "Hytera's failure to pay royalties for the H-Series . . . a significant violation of Judge Norgle's unambiguous command [to] include products that are substantially like the products adjudicated at trial," even if not explicitly named in the Royalty Order. TS Dkt. 1905 at 17, 35–36. So long as Hytera retains possession of Motorola's trade secrets, Hytera can—and certainly will—continue to unjustly profit from its crime to the detriment of the victim.

### B. Comprehensive Independent Oversight Is Essential to Hytera's Compliance

Whether the Court chooses to call it as a "special master," "compliance supervisor," or "independent compliance monitor," the Court should appoint an appropriate party,[22] at defendant's expense, to assist the Court and U.S. Probation in ensuring that the above terms of probation are honored. Hytera's own submissions prove this: their throughline is that Hytera claims it did nothing wrong, has no idea whether and what trade secrets might even be at issue, its legacy executives (including its founder and current chairman) bear no responsibility, and its purported compliance reforms are based on PRC respect for intellectual property. Hytera has brazenly defied court orders from both Judge Pacold and Judge Norgle, as recently as a few months ago; and according to a unanimous Seventh Circuit panel, "its unverified representations to the tribunal cannot be trusted" (*Motorola*, 108 F.4th at 472). There is simply no basis to believe that Hytera will treat this Court any differently. To protect confidence in the judiciary and avoid harm to Motorola and the broader public, the Court should empower a suitable independent authority to help ensure that the defendant does not defy its orders too. This is now a criminal case, and this Court should end defendant's "catch me if you can" strategy.

The Seventh Circuit empowers district courts to impose probationary conditions that are directly tied to a defendant's prior history of misconduct. *See, e.g., United States v. Dodds*, 947 F.3d 473, 477–78 (7th Cir. 2020). Both 18 U.S.C. § 3563(b)(22) and U.S.S.G. § 8B2.1 authorize

---

[22]    Any number of former federal judges, former senior law enforcement officials, law firms, and forensics consultancies accept court-ordered monitorships, including enlisting technical experts as needed.

and encourage courts to require felonious corporations to establish standards and procedures to prevent and deter future criminal conduct. The Justice Manual recognizes compliance monitors as "effective means of reducing the risk of further corporate misconduct and rectifying compliance lapses identified during a corporate criminal investigation," JM § 9-28.1700; the Department has identified four key factors to guide imposition: (1) risk that the misconduct will recur and materially affect U.S. interests; (2) availability and efficacy of other independent governmental oversight; (3) strength of the company's compliance program and culture at the time of resolution; and (4) maturity of the company's internal controls and its demonstrated ability to test and update those controls on its own.[23] These factors all favor imposition. *First*, the risk of recurrence is acute, as illustrated by repeated contempt findings, and its conduct has produced the kind of harm the Memorandum identifies—threatening the American economy by profiting from stolen technology. *Second*, there is no alternative government oversight mechanism sufficient to police Hytera's ongoing non-compliance. *Third*, Hytera's paper compliance program is demonstrably a dead letter. Notably, its top leadership tolerates its pirate ship ethos. Hytera's orchestrated efforts to misappropriate Motorola's trade secrets and then stymie the civil proceedings came straight from the top, with Hytera CEO Chen Qingzhou lying under oath during civil depositions that he had no knowledge of any wrongdoing.[24] Chen remains at Hytera and the "tone at the top" is singularly unhelpful.[25] *Fourth*, Hytera lacks any, let alone mature, controls capable of independent self-assessment. Its actions demonstrate a specific, perverse incentive structure for non-compliance.

If there were ever a case to impose a compliance monitor, this is it. If left unchecked and unmonitored, the defendant's non-compliance will simply continue. That would send a singularly unhelpful message to other bad corporate actors who contemplate a business development strategy

---

[23] Memorandum from the U.S. Dept. of Just. on Focus, Fairness, and Efficiency in the Fight Against White-Collar Crime to All Crim. Div. Pers. (May 12, 2025) [hereinafter Memorandum].

[24] The Victim Impact Submission discusses these lies and obfuscations in the civil case in more detail. Those assertions were directly contradicted by statements of co-defendant Gee Siong Kok. *See* Dkt. 78 at 4 (Qingzhou "███████████████████████████████████████").

[25] "Mr. Chen is still at Hytera[,]" (Ex. F, 2025-10-15 Hrg. Tr. at 304:18–19), despite Hytera's insistence that Mr. Chen is "no longer in control." *Id.* at 304:17–20.

to steal United States trade secrets and then aggressively manage any legal fallout at the cost of business by evasion, delay and obfuscation until everyone is worn out; all the while building a thriving new business.

## VI.    CONCLUSION

Motorola respectfully asks that the Court impose a sentence that includes: (1) a single lump-sum restitution payment of $290,799,352.30, to be paid in full within two weeks of sentencing; (2) the sequestration and destruction of all Motorola trade secrets in Hytera's possession and comprehensive conditions to end Hytera's use of them; and (3) a court-ordered monitor or similar authority to ensure compliance with these and other conditions of probation.

Dated: November 19, 2025

Respectfully submitted,

*/s/ Mark E. Schneider*

Mark E. Schneider, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
(312) 862-2253

Laura Vartain Horn (*admitted pro hac vice*)
laura.vartain@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

*Counsel for Motorola Solutions, Inc.*

24

**CERTIFICATE OF SERVICE**

I, Mark E. Schneider, an attorney, hereby certify that on November 19, 2025, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

Dated: November 19, 2025

            */s/ Mark E. Schneider*
            Mark E. Schneider

25