# Exhibit G

1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOTOROLA SOLUTIONS, INC., et al.,      )  Case No. 17 C 1973
                                       )
                                       )
                    Plaintiffs,        )
            v.                         )
                                       )
HYTERA COMMUNICATIONS                  )
CORPORATION, LTD., et al.,             )  Chicago, Illinois
                                       )  July 30, 2025
                    Defendants.        )  12:43 p.m.

TRANSCRIPT OF PROCEEDINGS - TELEPHONIC MOTION
BEFORE THE HONORABLE MARTHA M. PACOLD

APPEARANCES:

For the Plaintiffs:    KIRKLAND & ELLIS LLP
                       BY:  MR. ADAM R. ALPER
                            MR. AKSHAY S. DEORAS
                            MS. LAURA E. VARTAIN
                       555 California Street, 27th Floor
                       San Francisco, California 94104

                       KIRKLAND & ELLIS LLP
                       BY:  MS. LESLIE M. SCHMIDT
                       601 Lexington Avenue
                       New York, New York 10022

                       KIRKLAND & ELLIS LLP
                       BY:  MR. MICHAEL W. DE VRIES
                            MS. N. YVONNE BEELER
                            MR. CHRISTOPHER LAWLESS
                       555 Flower Street
                       Los Angeles, California 90071

For the Defendants:    STEPTOE & JOHNSON LLP
                       BY:  MR. BOYD T. CLOERN
                            MS. LEAH M. QUADRINO
                            MR. BILL TOTH
                            MS. KIRSTEN BICKELMAN
                       1330 Connecticut Avenue NW
                       Washington, DC 20036

perhaps well before that. Those are just the public announcements. And Hytera has said it's going to provide moneys to Motorola next week, and so that leads us to believe that the sale has already been consummated.

And it is crystal clear that Hytera controls those proceeds, as Your Honor said again at page 2 of the opposition brief, about line 15 or 16, where it says HCC is going to transfer these funds. That's consistent with Exhibit 6, the board of directors resolution, where the Hytera Communications Corp. board of directors says that the proceeds shall be used for certain purposes.

And so I think for those reasons, while there is evidence that HCC is the party that is directing and making this sale, again, we would know more if we had the purchase agreement, the Nazca Capital purchase agreement, which we've asked for and Hytera hasn't given us or the Court; but at this point, because they admit they have control over the proceeds, that's enough for Your Honor to order them to direct those proceeds into the escrow.

THE COURT: Okay. Thanks.

Let me then turn to Hytera, please.

MR. CLOERN: Thank you, Your Honor. This is Boyd Cloern.

So I think it's helpful to think of this in two pieces. One is the sale of the subsidiary Teltronic. There's

an allegation Motorola's claiming that violates the citation. It does not.

The second piece though is the proceeds were ultimately moved up the corporate chain to Hytera Communications Corp., Ltd., which is the judgment debtor, the defendant in this case, and is subject to the citation.

And so the 88 million, that cash, ultimately gets into HCC's possession and then therefore is something that's subject to the citation. And so I just want to take those in two pieces. I think it's -- not mixing them up is helpful.

So first the sale of the subsidiary. That does not violate the citation. The citation doesn't cover it. The entity that made the sale is called Teltronic S.L.U., and Teltronic S.L.U. sold all of the shares of its subsidiary called Teltronic S.A.U., and so Teltronic is a separate Spanish company. It's got its own technology. It's not DR. It has nothing to do with this case. It has tetra systems. It operates in Spain and South America but also some in America through another sub called PowerTruck.

I want to be clear. It's a completely separate business with its own technology and its own brand. It's not -- it's selling Teltronic and PowerTruck products.

Two, the public safety market, so that mission critical market, right? Teltronic made the decision to leave Hytera Group. It was Teltronic's decision, had nothing to do

with Hytera. There was confusion by being associated with a Chinese entity.

So Teltronic has a premium brand. It sells top-of-the-line military public safety, right, it's not lower-level DMR technology. It's tetra technology. So it's these public safety systems. It's got a blue chip brand, but it's being hurt, it feels, by its association with a Chinese group.

And further, and this is actually in Exhibit 5 attached to Motorola's motion, that very exhibit describes the Teltronic decision, and in particular the U.S. arm of Teltronic called PowerTruck points out to the press, they said, well, we got caught up in an injunction last summer. Because of Hytera's fight with Motorola, we got enjoined and got shut down for three weeks. So we just need to distance ourselves from Hytera's legal problems, and we need to be on our own because we're a separate business, separate technology, separate brand.

That's the reason for the sale. Teltronic wanted to leave Hytera Group and so spun itself off to a Spanish private equity firm and is now operating independently.

Hytera -- the HCC didn't direct it, didn't command it. HCC did, however, agree with it. They said we own Teltronic right now as an asset, and next year it's going to be worth less than it is this year, and the year after that it's going to be worth less because its premium brand, they're having

their approval on, which is some portion getting paid to the banks and the rest going to -- to Hytera, and I think -- I'm sorry, the rest going to Motorola.

THE COURT: Can I just ask quickly, and I'm going to have to go in a minute here because the trial is supposed to resume at 1:30, but I have the -- what's the current status of the proceeds? Are they currently with Hytera or if not, where and when will they be going somewhere?

MR. CLOERN: Sure.

So all of the proceeds consistent with the deal landed at Hytera, at HCC last week, and everything was already -- you know, it's all part and papered of the deal for all of the banks to get paid their share.

19 -- but it does take some days for these kinds of transactions to execute because moving money around China, they have tight currency controls that sometimes it takes time.

And so as of July -- as of last week, $19 million has been paid, has left Hytera's possession, to the banks. $36 million is the remainder of the amount to go to the banks that's still at Hytera's possession. All that was set to close yesterday.

Hytera, however, you know, as this developed and the motion was filed and Your Honor scheduled the hearing, Hytera asked the banks to hold off, and the banks have held off, and so Hytera has still possession of that 36 million.

The other 32 -- so out of the 88, 20 has gone to the banks.

Sorry, someone's talking.

Yeah, so out of the 88, 32 is going to Motorola next week. 36 is still at Hytera, and 19 has gone to the banks, and that 36 is still at Hytera. I do want to emphasize was supposed to go out yesterday, would have closed and left yesterday on execution, but Hytera put a stop on that and asked the bank to hold off out of -- just out of deference to Your Honor and so we could get through this proceeding first.

THE COURT: Okay. Thank you.

I -- I really need to wrap up the hearing, but maybe just a minute if Motorola wants to reply at all.

MR. DE VRIES: Yes, Your Honor. Thank you.

So the subsidiary sale was clearly subject to the transfer -- to the citation. I won't belabor that, but the claims that it had nothing to do with Hytera and Hytera didn't direct it are contradicted by the board of directors resolution at our Exhibit 6.

But putting that aside, it is conceded that the proceeds that we're talking about are at HCC. Hytera agrees that they're subject to the citation. We 100 percent dispute the claim that the banks have priority, and the suggestion that there's some other different agreements that weren't submitted that gives those banks priority is something we factually and

file a joint status report with a proposed briefing schedule.

Could you do that by close of business on Friday Central?

MR. DE VRIES: Yes, Your Honor, we will do that.

MR. CLOERN: Certainly.

MR. DE VRIES: We understand.

THE COURT: Okay.

MR. CLOERN: Yes, absolutely.

THE COURT: And if you need to discuss that further, if the written report is not enough and it would be helpful to discuss further, please just either request a status hearing in the report or reach out to the courtroom deputy.

Also, if you could please notify the courtroom deputy once you file the proposed order so that I know that it's there, I would appreciate it.

MR. DE VRIES: We will, Your Honor.

THE COURT: Okay. Thank you, everybody.

MR. DE VRIES: Thank you very much, Your Honor.

MR. CLOERN: Thank you.

THE COURT: All right, take care, bye.

MR. DE VRIES: Bye.

(Concluded at 1:38 p.m.)
*   *   *   *   *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Kathleen M. Fennell*          *July 31, 2025*
Kathleen M. Fennell                Date
Official Court Reporter